MINERS' CO-OPERATIVE ASS'N v. THE MONARCH.

(Third Division.   Fairbanks.   April 20, 1905.)

No. 200.

1. PARTNERSHIP—CREATION.

When two or more persons join in a mercantile venture upon an agreement to share the profits and losses thereof upon a fixed basis, they are partners.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 13, 27.]

2. SHIPPING—LOSS OR INJURY OF GOODS—FREIGHT MONEY—LIENS OF SHIPPER AND VESSEL.

A maritime contract for the transportation of goods on board a vessel operates reciprocally as a tacit pledge or mortgage to the shipper for the conveyance and delivery of the goods according to the contract, and of the goods themselves to the ship to secure payment of the freight earned.   The lien to the shipper arises alike whether the contract of affreightment be by charter party, by bill of lading, or by parol.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 488, 516.]

3. SAME—CARRIAGE OF GOODS—REFUSAL OF VESSEL—DAMAGES.

A maritime lien arises in favor of the shipper for damages upon the refusal of the vessel to fulfill its contract of affreightment.   The measure of damages for the refusal of the vessel to

meet its contract is the difference necessarily paid by the shipper to procure an equal service in advance of the contract price, and such other damage as unavoidably flows from the breach of the carrier's contract.

Libelant is a voluntary association of about 30 miners on Fairbanks, Cleary, and Pedro creeks, organized in the spring of 1904 for the purpose of procuring a season's supply of mining goods and groceries from Seattle for each of the members. R. N. McLeod was recognized as the head of its executive committee, and R. A. Chisholm was selected and acted as its purchasing agent and general manager. Each person who desired to join in the enterprise signed an agreement promising to assist in carrying out its purpose, but a few abandoned the project before paying in their money and filing their individual orders for supplies. Those who did pay in money and apply for goods remained and still are members.

McLeod and Chisholm, on behalf of libelant, contracted with the master and managing agent and owners of the steamer Monarch to transport the proposed shipment of goods from St. Michael to Chena upon the arrival of the goods at St. Michael from Seattle.

Chisholm left Chena on May 30th on the Monarch, and went to Seattle via Dawson to purchase the libelant's supplies. He left Seattle after August 1st, and upon reaching St. Michael with supplies learned that neither the Monarch nor Oil City had come there to meet his shipment. After some days' delay he secured their shipment from St. Michael to Chena on board another steamer, and was compelled to pay $80 per ton. Libelant paid the freight, and attached the Monarch to recover the difference between the contract price of $55 and the price paid, $80, on the shipment, which the proofs show consisted of 121 tons belonging to libelant.

Claypool, Stevens & Cowles and J. C. Kellum, for libelant. Heilig & Tozier, for claimant.

WICKERSHAM, District Judge.    Upon the close of libel-
ant's testimony claimant moved to dismiss the libel because
the association of parties called the "Miners' Co-operative
Association" did not constitute a partnership in law, in which
capacity it brought this suit and attached the vessel.  The court
reserved the question, and required claimant to introduce its
testimony.

The proofs disclose that the Miners' Co-operative Association
was a voluntary association of about 30 miners from Fair-
banks, Cleary, and Pedro creeks, in a joint effort to secure
a season's supply of mining goods at wholesale rates from
Seattle.  Each member signed an agreement binding himself
to aid in the enterprise, voted to elect officers, including a
purchasing agent and general manager, filed an order specify-
ing the goods which he desired, and paid the amount of the
order and his proportionate share of the expenses to the of-
ficers and agents of the association.  It was agreed that all the
goods should be purchased wholesale by the association's pur-
chasing agent, that all expenses of the agent, transportation,
freight, and losses should be paid by the members in propor-
tion that the value of their respective orders bore to the sum
total thereof.  All expenses and losses were so paid.  To pay
the unexpected freight charges incurred by the failure of the
claimant to meet the goods at St. Michael, a portion of them
were sold after their arrival at Chena, and from the proceeds
and profits of such sales the increased freight charges were
paid, and each member was either assessed accordingly, or
given a less quantity of goods.  In addition to the profit on
these sales, each member received a profit from the joint enter-
prise, consisting of the difference between the local selling price
and the outside cost price, with freight and expenses added.
.  Where two or more persons join in a mercantile venture up-
on an agreement to share the profits and losses thereof upon
a fixed basis, they are partners.  The members of the Miners'

2 A.R.—25

Co-operative Association were thus united; they also represent-
ed themselves as partners to the public, and to the agents and
owners of the Monarch, who treated with them as such.   It
was upon this aggregate basis that both parties acted in all
correspondence leading up to the contract sued upon, and
neither of them ought now to be heard to deny the fact.

A maritime contract for the transportation of goods on board
a vessel operates reciprocally as a tacit pledge or mortgage to
the shipper for the conveyance and delivery of the goods
according to the contract, and of the goods themselves to the
ship to secure payment of the freight earned.   The lien to the
shipper arises alike whether the contract of affreightment be
by charter party, by bill of lading, or by parol.   The lien like-
wise arises in favor of the shipper for damages upon the re-
fusal of the vessel to fulfill its contract.   The measure of dam-
ages for the refusal of the vessel to meet its contract is the
difference necessarily paid by the shipper to procure an equal
service in advance of the contract price, and such other damage
as unavoidably flows from the breach of the carrier's contract.
The Flash, Fed. Cas. Nos. 4,857, 4,858.

It is the judgment of the court that the evidence clearly es-
tablishes a contract by the vessel to carry libelant's freight
from St. Michael to Chena for $55 per ton, that it refused to
do so, and that libelant was forced to pay $80 per ton for
121 tons of freight, for which breach it may have judgment
against the vessel in the sum of $3,025 and costs.